Gregory John TROMBLEY,
Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC
SAFETY, Appellant.**

No. C7-85-807.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Dean S. Grau, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by PARKER, P.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

The Commissioner of Public Safety revoked respondent's driving privileges, and respondent brought a petition for judicial review. The trial court, without making any findings of fact, rescinded the revocation. We remand for findings.

## FACTS

On November 24, 1984, Ramsey County Deputy Sheriffs William Pavak and Bruce Rossini came upon a vehicle off the road in a drainage ditch. Two men were trying to push it out. The squad car stopped, and a man, later identified as Trombley, approached the squad car and said that he thought they could get the vehicle out with a little help. Trombley returned to the car with Pavak. The deputies initially assumed that the car had left the road and gone into the ditch, but Pavak determined from tracks in the frost on the grass that the vehicle had come down an embankment from an area where there is no road.

Pavak testified that Trombley told him that the vehicle was his and that he was driving it. While speaking to Trombley about the accident, Pavak noticed slurred speech and a strong odor of alcohol. He immediately advised Trombley that he was under arrest for DWI and escorted him to the squad car.

Trombley testified that he was questioned a number of times as to who was driving the car. He had been drinking,

was in a "state of confusion," and did not know what the officers were asking for. He may have stated more than once that he was the driver, but he also said that he had been driving earlier in the evening and that he did not drive the car into the ditch. Trombley testified at the hearing that, while he had driven the car earlier in the evening, his companion, Keith Knick, drove the car into the ditch.

After Trombley was arrested, Knick entered the car, tried to start it, and was arrested for "operating" a motor vehicle while intoxicated. Pavak testified that when he specifically asked Knick who had been driving when the car went into the ditch, Knick stated that it had been Trombley.

Knick testified at the hearing that he had been driving the automobile when it went into the ditch. He explained that he and Trombley had agreed that Trombley would drive earlier in the evening, and that Knick would drive later because Trombley does not see well at night. Knick later pleaded guilty to a charge of DWI arising out of the incident. At a hearing on a DWI charge against Trombley, Knick testified that he was driving the automobile when it left the road. He denied that he had ever told the officers that Trombley was driving at the time the automobile went into the ditch. The DWI charges against Trombley were dismissed.

At the implied consent hearing, Knick testified that he did not tell the officer who was driving the vehicle. He later testified that when the officer asked if he had been driving, he said no. Upon cross-examination, he said that when he was trying to get the car out of the ditch, he did not tell the officer anything in order to avoid "getting into trouble."

The implied consent advisory was read to Trombley at the scene and he said that he understood it and would submit to the breath test. A certified intoxilyzer operator administered the test. On the first of the two required breath samples, Trombley provided an adequate breath sample which measured an alcohol concentration of .196

on the initial analysis and .199 on the replicative analysis. On the second sample, Trombley again blew into the machine, but gave a deficient sample.

The officer certified to the Commissioner of Public Safety that Trombley failed the test with an alcohol concentration of .19. The notice of revocation subsequently served on Trombley did not indicate whether he submitted to testing and failed, or whether he refused testing, but it did indicate that his license should be revoked for ninety days.

At the end of the implied consent hearing, the trial court took the matter under advisement, and asked counsel to submit memoranda on the issues of whether the officer had probable cause to believe Trombley was driving while under the influence of alcohol and whether the failure to provide an adequate second sample constituted a refusal to submit to testing.

The trial court, without making any findings, ordered rescission of the revocation of Trombley's driving privileges, and the Commissioner of Public Safety appeals.

## ISSUE

Can this court conduct a meaningful review where there is conflicting testimony, no findings of fact, and several grounds upon which the trial court could have based its conclusion?

## ANALYSIS

Trombley raised two issues at the implied consent hearing: Whether the officers had probable cause to believe that he was driving the automobile while intoxicated, and whether failure to provide a second adequate breath sample constituted a refusal to submit to testing. The Commissioner argues, in effect, that the lack of findings is not fatal, because the facts are undisputed and the trial court erred as a matter of law if it found for Trombley on either issue. We cannot agree.

The trial court was sitting as the factfinder. It could have found that the officers had insufficient probable cause to in-

voke the implied consent law. *Reis v. Commissioner of Public Safety*, 358 N.W.2d 740 (Minn.Ct.App.1984). It could have found that there was sufficient probable cause, but that respondent did not refuse to take the test. *See* Minn.Stat. § 169.123, subd. 2b(c) (1984). It could have found that respondent refused, but that his refusal was based upon reasonable grounds. *See* Minn.Stat. § 169.123, subd. 6 (1984). It could have found that the Commissioner incorrectly treated the test as a failure, when it was actually a refusal. *Godderz v. Commissioner of Public Safety*, 369 N.W.2d 606 (Minn.Ct.App.1985).

 Without findings of fact, we are unable to discern the basis of the trial court's order. We stated in *Schafer v. Commissioner of Public Safety*, 348 N.W.2d 365 (Minn.Ct.App.1984):

> [O]nly trial courts are in the position to evaluate witnesses. Accordingly their decisions on factual matters are subject to the high clearly erroneous standard of review. * * * [A]ppellate courts are courts of review. The jurisdiction of an appellate court is limited to questions actually decided by the trial court.

*Schafer*, 348 N.W.2d at 368. Accordingly, we are unable to conduct a meaningful review of this appeal, and we must remand for findings of fact.

Trombley also contends that, in an implied consent proceeding, the State is required to prove by a fair preponderance of the evidence that he was actually driving, operating, or in physical control of the motor vehicle. He argues that he was not driving the car at the time it went into the ditch. He also moved this court to amend his petition for judicial review to add a paragraph specifically raising this issue, contending that it was litigated by consent. This matter should have been addressed to the trial court. We cannot conclude from the record that it was and, hence, we do not address the issue here.

## DECISION

We cannot determine the grounds upon which the trial court decided to rescind the revocation of respondent's license, and therefore we cannot properly review the matter on appeal. This matter is remanded to the trial court for findings of fact in support of its rescission of the revocation of respondent's driving privileges.

Remanded.